ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| USAC Aerospace Group Inc. dba ) | ASBCA Nos. 59114, 59115, 59121 |
|   USAC Aerospace Group: Aerostructures ) | 59122, 59123 |
| ) | |
| Under Contract No. SPM4A6-10-D-0188 ) | |

APPEARANCE FOR THE APPELLANT:  Mr. Michael Sammon
  President

APPEARANCES FOR THE GOVERNMENT:  Daniel K. Poling, Esq.
  DLA Chief Trial Attorney
  Jason D. Morgan, Esq.
  Edward R. Murray, Esq.
  Trial Attorneys
  DLA Aviation
  Richmond, VA

## OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE GOVERNMENT'S MOTION TO DISMISS

The Defense Logistics Agency, Aviation Supply Chain (DLA or the government), moves to dismiss as untimely these appeals by USAC Aerospace Group Inc. dba USAC Aerospace Group: Aerostructures (USAC, appellant or the contractor). The government asserts that USAC filed these appeals more than 90 days after it received the final decisions (COFDs) of the contracting officer (CO), which terminated the subject contract and previously-issued delivery orders (DOs). The government further contends that the Board lacks jurisdiction over ASBCA Nos. 59114 and 59115, alleging that USAC's notices of appeal concerning these reflect an inchoate intent to appeal to the United States Court of Federal Claims and not to the ASBCA. DLA suggests as an alternative basis for dismissal of DO 0001, docketed as ASBCA No. 59114, that the DO does not survive termination for default of the underlying contract. We grant the motion in part.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

*The Parties' Contract and Contract Administration*

1. On 3 May 2010, DLA awarded to USAC indefinite quantity Contract No. SPM4A6-10-D-0188 for a base year of performance plus four optional years of

performance. The contract called for USAC to furnish the government with "CAM, LATCH, HOLDBACK" (latches), identified by National Stock Number (NSN) 1440-01-127-2424, at the price of $44.50 each. The contract estimated that DLA would require 650 latches per year, and established a maximum annual order of 1,301 latches. The maximum price for the base year was $57,894.50. The contract called for a First Article Test (FAT) within 90 days of contract award. (Gov't mot., ex. 1)

2. Also on 3 May 2010, DLA issued DO 0001 for 1,082 latches (gov't mot., ex. 2). The government modified that order to add a contract line item in the amount of $3,250 for the delivery of a sample latch within 90 days of contract award to provide a first article for testing in accordance with the basic contract (*id.*, ex. 3). DLA on 16 June 2011 issued DO 0002 to purchase 163 latches from USAC (*id.*, ex. 4). The government issued DO 0003 on 12 August 2011 to acquire 231 latches (*id.*, ex. 5), and DO 0004 on 15 September 2011 for an additional 60 latches (*id.*, ex. 6).

3. On 10 December 2010, 20 January 2011, and 12 April 2013, DLA issued a series of contract modifications to DO 0001. The last of these modifications established 11 July 2013 for delivery to the government of the sample latch for the FAT. (Gov't mot., exs. 7-9)

4. The CO on 30 July 2013 issued a "SHOW CAUSE NOTICE" to USAC, warning that DLA "is considering terminating your contract for default" because the contractor failed to timely submit a sample latch for the FAT as required. Appellant was given 10 days after receipt of this notice to respond with information regarding proposed remedial action. (Gov't mot., ex. 10)

5. In its 2 August 2013 reply to the government's show cause notice, USAC attributed its failure to timely furnish a sample latch for the FAT to its subcontractor, Robinson Manufacturing. USAC requested another 60-90 days for performance and an additional $1,500 "in consideration for Modifications executed as a result of" actions proposed in its response to the show cause notice. (Gov't mot., ex. 11)

6. On 16 September 2013, the CO prepared a memorandum for record (MFR) which detailed the reasons the CO had determined to terminate USAC's contract in accordance with Federal Acquisition Regulation (FAR) 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984), which the CO stated "is included in the contract."[1] The MFR noted that the contractually-required latches are "a critical application item that is used on a Guided Missile Launcher." The CO stated that

---

[1] The seven-page contract in the record does not contain FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) (*see* gov't mot., ex. 1, *passim*).

2

"[t]here is an urgency of need as we have serious backorders on this item[,]" the latches are "available from another source," and USAC has not identified excusable delays for nonperformance. (Gov't mot., ex. 13)

*Termination for Default of the Underlying Contract and DOs*

7. On 19 September 2013, the CO issued five COFDs which respectively notified USAC that the base contract and four DOs were "terminated for default effective immediately" due to the contractor's "failure to deliver the supplies in accordance with the established delivery schedule." USAC was advised in each COFD that it had the right to appeal the decision to the ASBCA within 90 days of receiving the decision. USAC was further advised that, in the alternative, it had the right to appeal the COFDs to the United States Court of Federal Claims within 12 months. (Gov't mot., exs. 14-18)

8. The government sent the COFDs terminating for default the underlying contract and DOs to USAC by means of the United States Postal Service (USPS), certified mail (gov't mot., ex. 19). According to USPS's "Product & Tracking Information," all five of the COFDs notifying the contractor of the terminations were delivered to USAC on 25 September 2013 (*id.*, ex. 20).

9. In addition to the five COFDs, DLA on 20 September 2013 issued separate unilateral contract modifications that terminated the underlying contract and DOs 0002, 0003, and 0004.[2] Each of the corresponding modifications reiterated the language of the COFD of 19 September 2013, including notice to USAC of its appeal rights to either the Board or the Court. (Gov't mot., exs. 21, 23-25)

10. The contract modification terminating DO 0001, which also contained the COFD and informed the contractor of its appeal rights, was issued by DLA to USAC on 3 October 2013 (gov't mot., ex. 22).

11. By emails of 20 September 2013 sent to USAC's registered email address, DLA furnished a copy of the contract modifications terminating the base contract and DOs 0002, 0003, and 0004 to USAC (gov't mot., exs. 31-34). By email dated 3 October 2013, DLA provided USAC with a copy of the contract modification terminating DO 0001 (*id.*, ex. 35).

---

[2] The government's motion explains that "DLA was required to issue a separate modification for the basic contract and each of the [DOs] in order to terminate each of the procurement documents in its automated procurement system. Because of this administrative quirk, and out of an abundance of caution, DLA also sent five notices of termination to USAC." (Gov't mot. at 3 n.3)

3

12. DLA publicly posted the contract modifications terminating the underlying contract and DOs 0002, 0003, and 0004 on DLA's Internet Bid Board System (DIBBS) website on 20 September 2013 (gov't mot., exs. 26, 28-30). The government publicly posted the contract modification terminating DO 0001 on DIBBS on 3 October 2013 (id., ex. 27).

*USAC's Notices of Appeal to the Armed Services Board of Contract Appeals*

13. USAC on 31 December 2013 sent six emails to the CO, each carrying the salutation "Good Morning Janice Hicks and Armed Services Board of Contract Appeals" (gov't mot., exs. 36-41). In each email, the contractor advised that "USAC Aerospace Group (5RUB5), is Appealing the U.S. Government decision of Termination by Default" pursuant to "the referenced Show Cause Letter Response and referenced emails from Mr. Anthony Gray, PCO, regarding a Subcontractor's letter dated September 27, 2013." USAC attached to these separate emails copies of the government's five contract modifications terminating the underlying contract and DOs. (Id., exs. 36-41) The DLA CO did not forward these emails to the Board.

14. USAC also mailed notices of its appeal of "DLA Aviation['s] decision of Termination by Default" to the Board. The envelope was properly addressed to the Board, and each notice of appeal directed to the attention of the ASBCA and DLA officials including the CO. However, according to the USPS "Priority Mail Express" receipt, the single envelope containing these notices of appeal was mailed on 2 January 2014. The Board's date stamp shows that this envelope was received on 3 January 2014.

15. Enclosed by USAC with one of the two notices of appeal mailed to the Board was a copy of the contract modification terminating DO 0001. This appeal was docketed as ASBCA No. 59114; the notice was dated by USAC as "January 01, 2014." The contractor's notice stated that "The reasoning for our Appeal will be described in full within the action presented to the U.S. Court of Federal Claims."

16. USAC enclosed with the second of the two notices of appeal mailed together to the Board a copy of the modification terminating the underlying contract for default. In this appeal, which was docketed as ASBCA No. 59115, USAC again stated that "The reasoning for our Appeal will be described in full within the action presented to the U.S. Court of Federal Claims." The contractor self-dated the notice of appeal in ASBCA No. 59115 as "18 December 2013."

17. USAC filed three additional, separate notices with the ASBCA, appealing from the COFDs terminating the remaining DOs. DO 0002, DO 0004, and DO 0003 were docketed as ASBCA Nos. 59121, 59122, and 59123, respectively. The notices in these appeals were self-dated by the contractor as "18 December 2013." According to

the USPS postmarks on the corresponding envelopes, each of these notices was mailed on 6 January 2014; ASBCA records show that these notices of appeal were received by the Board on 9 January 2014.

## DECISION

The government on 3 February 2014 filed a motion to dismiss the subject appeals as untimely.

### 1. *The Government's Contention that the Appeals are Untimely*

The government argues that USAC failed to comply with the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, specifically the 90-day filing requirement for filing an appeal with an agency board of contract appeals found in 41 U.S.C. § 7104. DLA contends that "USAC received the [COFDs] and notification of its appeal rights when DLA sent the termination for default contract modifications (with the exception of the modification for [DO] 0001) via e-mail on September 20, 2013, to USAC's registered e-mail address." The government dismisses the "system error [which] precluded DLA from posting and e-mailing the termination modification under [DO] 0001 until October 3, 2013 [as] of no moment" because "DLA unquestionably terminated the basic contract for default on September 20, 2013, which terminated the entire contract and all of the outstanding [DOs] thereunder." (Gov't mot. at 6)

DLA alleges that USPS records show that USAC also received copies of the COFDs terminating the underlying contract and four DOs by certified mail on 25 September 2013. The government "assum[es] the notices of termination served as the initial notice," and that the period for USAC to appeal to the Board, even for DO 0001, "began to run on September 25, 2013, and ended 90 days later on December 24, 2013" (*id.* at 6-7).

USAC on 26 June 2014 replied to the government's motion. As in its 2 August 2013 response to the government's show cause notice, appellant alleged that it was unable to timely provide the government with compliant latches for reasons beyond its control. The contractor once more faulted its subcontractor Robinson Manufacturing for failing to perform, and criticized the government for not participating in additional meetings to discuss supplier problems. Although appellant explained that it had spent additional time trying to resolve its supply difficulties, USAC did not address the issue of whether it timely filed the captioned appeals.

*a.    The Contractor's Receipt of the COFDs Terminating the Underlying
Contract and DOs 0001, 0002, 0003, and 0004.*

The time allowed to appeal a COFD is set by statute, and is not a matter over which the Board has discretion. The CDA requires at 41 U.S.C. § 7104(a) APPEAL TO AGENCY BOARD, that "A contractor, within 90 days from the date of receipt of a contracting officer's decision under section 7103 of this title, may appeal the decision to an agency board as provided in section 7105 of this title." The "90-day filing period is statutory and cannot be waived by the Board." *Frasson Lodovico S.r.1.*, ASBCA No. 58645, 14-1 BCA ¶ 35,525 at 174,114 (citing *Cosmic Construction Co. v. United States*, 697 F.2d 1389 (Fed. Cir. 1982)). To calculate whether USAC timely made these appeals, we determine both the date the COFD was received by the contractor and the 90-day period for making an appeal commenced, and the effective date USAC filed its notices of appeal.

The government bears the burden of proving the date the COFD was received by the contractor. *Singleton Enterprises*, ASBCA No. 58235, 14-1 BCA ¶ 35,554 at 174,227. Consistent with this requirement, FAR 33.211, CONTRACTING OFFICER'S DECISION calls for the CO to furnish the contractor with a copy of the COFD "by certified mail, return receipt requested, or by any other method that provides evidence of receipt." Where the government furnishes the contractor with multiple copies of the COFD, "the latest received decision begins the 90-day period for appeal." *Frasson Lodovico*, 14-1 BCA ¶ 35,525 at 174,114 (citing *AST Anlagen-und Sanierungstechnik GmbH*, ASBCA No. 51854, 04-2 BCA ¶ 32,712).

Here, DLA provided USAC with multiple copies of the COFD terminating the underlying contract and DOs, both as stand-alone decisions and as contained in contract modifications that reiterated the corresponding COFD including the contractor's appeal rights (*see, e.g.*, SOF ¶¶ 8-12). In accordance with established practice for documents sent by government mail (*see, e.g., Singleton Enterprises*, 14-1 BCA ¶ 35,554 at 174,227), we accept the USPS "Product & Tracking Information" as proof that 25 September 2013 was the last date that USAC received a copy of the COFDs terminating the underlying contract and DOs 0002, 0003, and 0004 (SOF ¶ 8). These COFDs and contract modifications were specifically furnished by the CO to the contractor in accordance with FAR 33.211 and began the appeal period for these final decisions, which are docketed as ASBCA No. 59115 (the underlying contract), No. 59121 (DO 0002), No. 59122 (DO 0004), and No. 59123 (DO 0003) (SOF ¶¶ 15-17). USAC was last furnished an emailed copy of the contract modification and COFD terminating DO 0001 (ASBCA No. 59114) by DLA on 3 October 2013 (SOF ¶ 11); we accept this as the final date that USAC was provided with a copy of this COFD.

*b.  The Effective Dates of USAC's Appeals to the ASBCA.*

Having established the operative dates when USAC received the COFDs upon which these appeals are based, we ascertain the last dates on which USAC could timely appeal those decisions.  Board Rule 5.  <u>Time, Computation, and Extensions</u> provides in relevant part:

> (b)  In computing any period of time, the day of the event from which the designated period of time begins to run will not be included, but the last day of the period will be included unless it is a Saturday, Sunday, or a Federal holiday, in which event the period will run to the next business day.

Under this rubric, USAC had until 24 December 2013 to timely file an appeal in ASBCA Nos. 59115, 59121, 59122 and 59123.  Under Rule 5(b), the 90-day appeal period began on Thursday, 26 September 2013, the day after USAC received the pertinent COFDs by USPS and ended on 24 December 2013, the last day for USAC to timely file an appeal to this Board in ASBCA Nos. 59115, 59121, 59122 and 59123.  USAC was last furnished with a copy of the COFD terminating DO 0001 on Thursday, 3 October 2013.  Consistent with Board Rule 5(b), the period for filing ASBCA No. 59114, the appeal from this COFD, began on 4 October 2013 and expired on Wednesday, 1 January 2014.  As this is New Year's Day and a Federal legal public holiday, the last day for USAC to appeal in ASBCA No. 59114 is Thursday, 2 January 2014.

Our next inquiry into the timeliness of these appeals is the date when each appeal was made to the ASBCA.  The contractor first sent a notice of appeal for each COFD to the CO by email, then mailed by means of USPS a different notice of each appeal to the ASBCA.  As to the first submission, USAC sent emails to DLA (only) that carried a salutation to both the CO and the ASBCA on 31 December 2013 which clearly expressed the contractor's intention of appealing the COFDs terminating the underlying contract and DOs 0001, 0002, 0003, and 0004 (SOF ¶ 13).

The Board was not made aware of these emails to the DLA CO until 4 February 2014, when printed copies of the emailed messages were provided by DLA as exhibits in support of the government's motion to dismiss (*see* gov't mot., exs. 36-41).  In docketing these appeals, the Board had relied upon notices of appeal mailed to it by USAC.  According to the USPS "Priority Mail Express" receipt, the single envelope containing ASBCA Nos. 59114 and 59115, appealing from the COFDs terminating DO 0001 and the underlying contract respectively, was mailed on 2 January 2014; these appeals were received by the Board on 3 January 2014.  (SOF ¶¶ 14-16)  According to the USPS postmarks, USAC on 6 January 2014 separately mailed notices

7

of appeal in ASBCA Nos. 59121, 59122, and 59123 appealing the termination of DOs 0002, 0004, and 0003 respectively. These were received by the Board on 9 January 2014. (SOF ¶ 17) For a document transmitted to the Board by official government mail, we rely upon the USPS postmark or postal receipt to fix the date an appeal was made, *Premier Group*, 13 BCA ¶ 35,349, and not the typed date affixed to the correspondence by the contractor, unless record evidence compels a different finding.

Although the Board administratively assigned docket numbers based upon the notices of appeal it received via USPS from the contractor, we accept the earlier date of 31 December 2013 as the date these appeals were effectively filed. This was the date that USAC sent emails to the CO, each carrying the salutation "Good Morning Janice Hicks and Armed Services Board of Contract Appeals." Even though Board Rule 1. Appeals requires in relevant at paragraph (a) that "notice of an appeal shall be in writing and mailed or otherwise furnished to the Board within 90 days from the date of receipt of a contracting officer's decision," appeals on occasion have been sent by the contractor to the CO instead of the Board. Under such circumstances, we have accepted such misdirected fillings as effective notices of appeal to the Board. "[I]t is well settled that filing an appeal with the contracting officer is tantamount to filing with the Board." *Ft. McCoy Shipping & Services*, ASBCA No. 58673, 13 BCA ¶ 35,429 at 173,794-95 (citing *ESA Environmental Specialists, Inc.*, ASBCA No. 55620, 07-1 BCA ¶ 33,573 at 166,312; *Thompson Aerospace, Inc.*, ASBCA Nos. 51548, 51904, 99-1 BCA ¶ 30,232 at 149,570; *Massachusetts Microwave Tube & Device Corp.*, ASBCA No. 52020, 99-1 BCA ¶ 30,350 at 150,100). However, despite our acceptance of USAC's 31 December 2013 emails to the CO as the first effective notices of appeal to the Board in Nos. 59115, 59121, 59122 and 59123, these filings, made prior to mailed notices to the ASBCA, are still untimely because the appeal period expired on 24 December 2013.

As the statutory period for appealing a COFD was not met, we are without jurisdiction in ASBCA Nos. 59115, 59121, 59122 and 59123. These appeals are dismissed for lack of jurisdiction as untimely.

We examine separately USAC's appeal of the termination of DO 0001, which is docketed as ASBCA No. 59114. The contractor received the last notice of the COFD for this DO on 3 October 2013, a later date than for the other four COFDs associated with this contract and the DOs; the 90-day appeal period here expired on 2 January 2014. As USAC's effective notice of appeal emailed to the CO was received on 31 December 2013, the appeal is timely. We deny the government's motion to dismiss with respect to ASBCA No. 59114.

8

*2.    The Government's Alternate Basis for Dismissal of ASBCA Nos. 59114 and 59115 as Inchoate Appeals to the United States Court of Federal Claims.*

The government asserts an alternate basis for summary judgment in ASBCA Nos. 59114 and 59115 that these are, at most, inchoate appeals intended to be made to the United States Court of Federal Claims. DLA alleges:

> [I]t is unclear whether USAC intended to file appeals 59114 and 59115, at all. In its filings USAC simply states that DLA Aviation's decision to terminate the contract for default is "being appealed" and that "[t]he reasoning for [USAC's] [a]ppeal will be described in full within the action presented to the U.S. Court of Federal Claims." The fairest reading of these filings is that they are a misdirected effort to provide notice of USAC's intent to file an action at the United States Courts of Federal Claims, where its appeals would be—at least, for now—timely. *See Oconto Elec[.] Inc.*, ASBCA No. 36789, 88-3 BCA ¶ 21,188 (dismissing appeal where "[a]t best, the record show[ed] an inchoate intent to appeal to the United States Claims Court").

(Gov't mot. at 1 n.1)

As noted in § 1(b) of this decision (above), the CDA provides at 41 U.S.C. § 7104(a) that a contractor may appeal to an agency board of contract appeals within 90 days of receiving the COFD. In the alternative, 41 U.S.C. § 7104(b) allows a contractor 12 months to "bring an action directly on the claim in the United States Court of Federal Claims...." This provides a contractor with a choice of forum in making its appeals.

USAC's 31 December 2013 effective notices of appeal in ASBCA Nos. 59114 and 59115 were emailed to DLA's CO and, as noted earlier, carry the salutation "Good Morning Janice Hicks and Armed Services Board of Contract Appeals."[3] The contractor does not mention the Court of Federal Claims anywhere in the email. The subsequent notices of appeal in ASBCA Nos. 59114 and 59115 mailed to the ASBCA were directed to the Board's correct address; the enclosed correspondence showed the ASBCA as the addressee; and the salutation twice specified that the notice was brought to the Board's "Attention."

---

[3] USAC makes no mention of the United States Court of Federal Claims in its notices of appeal in ASBCA Nos. 59121, 59122, and 59123.

9

The language to which the government refers appears in the body of the notices: following the paragraph noting that the pertinent COFD "is being Appealed," USAC states that "The reasoning for our Appeal will be described in full within the action presented to the U.S. Court of Federal Claims." The ASBCA on 17 June 2014 wrote the parties, noting that the CDA makes both Board and the Court available as alternative forums, quoting the contractor's reference to the Court in the mailed notices of appeal, and requesting that USAC "clarify whether it intended to appeal ASBCA Nos. 59114 and 59115" to the ASBCA or the Court. USAC's 20 June 2014 response to the Board did not mention the Court, but commented on the merits of its position and expressed appreciation for the opportunity to explain its position with respect to termination of the contract.

We find that the *pro se* appellant's sole reference to the Court does not override its repeated statements of intent to appeal to the Board. Further, we interpret USAC's statement that the appropriate COFD in ASBCA Nos. 59114 and 59115 "is being Appealed" to express a current intent to lodge an appeal. We deny this portion of the government's motion.

3.     *Should ASBCA No. 59114 for DO 0001 be Dismissed Because the Underlying Contract Was Previously Terminated?*

The government posits that:

> The fact that a system error precluded DLA from posting and e-mailing the termination modification under [DO] 0001 until October 3, 2013, is of no moment. As recounted above, DLA unquestionably terminated the basic contract for default on September 20, 2013, which terminated the entire contract and all of the outstanding [DOs] thereunder.

(Gov't mot. at 6) We understand DLA to suggest that because USAC did not timely appeal the termination of the underlying contract in ASBCA No. 59115, it has no right to appeal the termination of DO 0001 in ASBCA No. 59114. However, other than making the brief, quoted statement above, the government provides no legal analysis of statute, regulation or caselaw to support its position. As we find this argument is not adequately developed and are unable to ascertain whether there are disputed material facts, it is premature to rule upon this argument.

10

## CONCLUSION

We grant the government's motion to dismiss in part. We grant the motion in ASBCA Nos. 59115, 59121, 59122, and 59123, and dismiss these appeals as untimely made to the Board. We deny the government's motion on the basis that ASBCA No. 59114 should be dismissed as an inchoate appeal to the United States Court of Federal Claims. We decline to rule upon the government's suggestion that ASBCA No. 59114 appealing the termination of DO 0001 cannot survive the government's termination of the underlying contract.

Dated: 4 December 2014

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59114, 59115, 59121, 59122, 59123, Appeals of USAC Aerospace Group, Inc. dba USAC Aerospace Group: Aerostructures, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals